[19, 22]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
NEKIESHA WILLIAMS,                      :
            Plaintiff                   :
                                        :
            v.                          :          Civil Action No. 05-1805 (FLW)
                                        :
COUNTY OF GLOUCESTER,                   :
GLOUCESTER COUNTY                       :
PROSECUTOR SEAN F. DALTON,:
TOWNSHIP OF WEST                        :
DEPTFORD, et al.,                       :
            Defendants                  :          **OPINION**
_____:


**WOLFSON,** District Judge

 Plaintiff, Nekiesha Williams ("Williams"), contends, inter alia, that Gloucester County

Prosecutor, Sean F. Dalton ("Dalton") and the County of Gloucester (hereinafter known

collectively as "Gloucester County Defendants") violated her Fourth and Fourteenth Amendment

Rights under 42 U.S.C. § 1983 in connection with her arrest by the West Deptford Police

Department. Specifically, Plaintiff alleges that the Gloucester County Defendants: (1)

implemented policies and/or customs that failed to properly investigate police misconduct; and

(2) implemented policies and/or customs that failed to adequately supervise and train law

enforcement officers. In addition, Plaintiff alleges various state claims against the Defendants

including intentional misconduct, negligence, gross negligence, deliberate indifference and abuse

of process. On November 1, 2005, Defendants filed a Motion to Dismiss pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6).  On December 7, 2005, Plaintiffs filed a Motion for Leave to File Late Tort Claim Notices.  The Court has considered the moving, opposition and reply briefs, and for the reasons stated in the opinion below, Plaintiff's Motion is denied and her state claims against the County Defendants are dismissed, and Defendants' Motion is granted in part and denied in part.

## I. Background

The following facts are gleaned from Plaintiff's Amended Complaint.  On or around August 6, 2003, Plaintiff was a resident of Unit B-9 of the Red Bank Run Apartments, a housing complex located in West Deptford, New Jersey.  At or around 6:30 p.m., members of the West Deptford Police Department and the Gloucester County Prosecutor's Office were waiting to execute a search warrant at unit C-3 of the Red Bank Run Apartments.  At the same time, Plaintiff looked out her window to check on her five year old daughter who was riding her bicycle in the front of the apartment.  Plaintiff, however, did not see her daughter; instead, Plaintiff observed the Defendants standing with weapons drawn in front of Apartment C-3.  At that point, Plaintiff went outside to look for her daughter and Plaintiff's  neighbor, Ms. Harrell, told Plaintiff that her daughter was inside her apartment.  Plaintiff attempted to enter the neighbor's apartment, but she was stopped by one of the officers and told that she could not enter the apartment.[1]  Plaintiff continued to try to look for her daughter in the apartment, however, at some point, Plaintiff alleges that several officers grabbed her, slammed her into the ground and

---

[1]The Court notes that the Complaint is unclear as to whether Ms. Harrell lived in apartment C-3 or a different apartment.

placed her under arrest.  As a result of the force used, Plaintiff suffered a fractured femur that required immediate surgery, and she remained hospitalized for several weeks.

Subsequently, the West Deptford Police department charged Plaintiff with aggravated assault, simple assault, obstructing the administration of law and resisting arrest.  The criminal case against Plaintiff was resolved in March 2005 when Plaintiff was accepted into a Pre-Trial Intervention Program.   However, Plaintiff filed a tort claim notice with the Township of West Deptford on or around October 20, 2003, that identified the Township and various officers as being responsible for her injuries. On April 1, 2005, Plaintiff filed a §1983 complaint against West Deptford Township, West Deptford Police Chief James P. Mehaffey and three individual officers – Goggin, Pfeiffer and Mckenna ("West Deptford Defendants").  On August 8, 2005, Plaintiff filed a motion to amend the complaint to join the Gloucester County Defendants.  This motion was granted, and on August 26, 2005, Plaintiff filed an Amended Complaint.  On November 1, 2005, the Gloucester County Defendants filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  On December 7, 2005, Plaintiff filed a Motion for Leave to File Late Tort Claim Notices on the Gloucester County Defendants.

## II. Legal Standard

Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The standard of review on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction varies depending on whether the defendant makes a facial or factual challenge. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir.

2000). The standard for reviewing a facial attack is similar to the standard governing a Rule

12(b)(6) motion. "In reviewing a facial attack, the court must only consider the allegations of the

complaint and documents referenced therein and attached thereto, in the light most favorable to

the plaintiff." Id. at 176. In contrast, in reviewing a factual challenge, the allegations of the

complaint are not accepted as true, and "the court may consider evidence outside the pleadings."

Id. This case concerns a facial challenge.

When considering a motion to dismiss a complaint for failure to state a claim under Rule

12(b)(6), a court must "accept as true the facts alleged in the complaint and all reasonable

inferences that can be drawn from them. Dismissal under Rule 12(b)(6). . . is limited to those

instances where it is certain that no relief could be granted under any set of facts that could be

proved." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990) (citing Ransom v.

Marrazzo, 848 F.2d 398, 401 (3d Cir.1988)); see also H.J. Inc. v. Northwestern Bell Tel. Co.,

492 U.S. 229, 249-50 (1989). A court will dismiss a complaint only if "it is clear that no relief

could be granted under any set of facts that could be proved consistent with the allegations."  H.J.

Inc., 492 U.S. at 249-50.  Moreover, the Federal Rules of Civil Procedure generally do not

require detailed pleading of the facts on which a claim is based.  Instead, all that is required is "a

short and plain statement of the claim showing that the pleader is entitled to relief," enough to

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests."  Fed. R. Civ. P. 8(a)(2); see also Alston v. Parker, 363 F.3d 229, 233-34 (3d Cir. 2004).


**III. Discussion**

**1. Eleventh Amendment and 1983 claims**

4

Defendants contend that Plaintiff's Complaint must be dismissed because it is barred by the Eleventh Amendment.  The Eleventh Amendment establishes that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or subjects of any foreign state."  U.S. Const. Amend. XI.  Thus, in the absence of consent or a  waiver of immunity, a federal court lacks jurisdiction to hear claims brought by an individual against a state or a state agency.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  Moreover, a suit is barred by the eleventh amendment even when the state is not named a party to the action as long as "the state is the real, substantial party in interest."  Bennett v. City of Atlantic City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003).  A state is the real party in interest "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration or if the effect of the judgment would be to restrain the Government from acting or compel it to act."  Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989).  Under this framework, state agencies and officials acting in their official capacities are routinely afforded Eleventh Amendment immunity.  Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 (1989); Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989).  However, municipalities and political subdivisions of a state are generally not afforded this protection.  Buckhannon Bd. & Care Home, Inc., v. W. Va. Dept. Of Health and Human Res., 532 U.S. 598, 609 n. 10 (2001) ("Only States and state officers acting in their official capacity are immune from suits for damages in federal court. Plaintiffs may bring suit for damages against all others, including municipalities and other political subdivisions of a State")(citations omitted); see also Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280

(1977) (finding that the Eleventh Amendment does not extend to "counties and similar municipal corporations" unless the entity is an "arm of the State.").

Thus, in determining if a claim is barred by sovereign immunity, a court must initially determine if the state is the real party in interest.  Under Fitchik, a court must consider: (1) whether payment of a judgment resulting from the suit would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. See Fitchik, 873 F.2d at 659.  These factors, however, are not weighed evenly and the Third Circuit has expressly held "that the most important question in determining Eleventh Amendment immunity is 'whether any judgment would be paid from the state treasury.'" Carter v. City of Philadelphia, 181 F.3d 339, 348 (3d Cir. 1999)( citing Bolden v. Southeastern Pennsylvania Transportation Authority, 953 F.2d 807, 816 (3d Cir. 1991)).  Moreover, Defendants bear the burden of proving that they are entitled to sovereign immunity.  See Chisolm v. McManimon, 275 F. 3d 315, 323 (3d Cir. 2001).

However, this is not the end of the inquiry.  When a court applies the Fitchik factors to an entity that performs in more than one capacity, the court must first determine the capacity in which the entity was acting when its actions gave rise to the Plaintiff's claims.  See Davis v. Lakewood, 2005 WL 1863665 at *4 (D.N.J. Aug. 4, 2005).  In New Jersey, for example, county prosecutors have a hybrid status.  Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996).  The Third Circuit established that, "when county prosecutors execute their sworn duties to enforce the law. . .they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions. . . the county prosecutor in effect acts on behalf of the county that is the situs of his or her office."  Id.

6

In the instant matter, Defendants argue that to the extent that Dalton is liable for his law enforcement or prosecutorial acts, the state is the real party in interest and neither Dalton nor the county may be held liable.  The Court agrees.  Indeed, the New Jersey Supreme Court has established that:

> [W]hen [county] prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the county prosecutors, N.J.S.A. 2A:158-4, subject to the Attorney General's right to supersede. The legislative delegation, in combination with the Attorney General's supervisory authority and power to superseded, demonstrates that at its essence the county prosecutors' law enforcement function is clearly a State function. . . the county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General. . .a county cannot be held vicariously liable for the actions of prosecutorial defendants related to the investigation and enforcement of the criminal laws of the State. Thus, it follows that when county prosecutors and their subordinates act in their law enforcement/investigatory capacity, they act as "agents" and "officers" of the State.

Wright, 169 N.J. at 462 (citations omitted).

Therefore, to the extent that Plaintiff alleges that Dalton is liable in his official capacity for his prosecutorial acts, the Court finds that Dalton was acting as a state agent and is thus entitled to sovereign immunity.  Moreover, to the extent that Plaintiff alleges that the County is vicariously liable based on its oversight of Dalton, Plaintiff is wrong.   Gloucester County is not liable for the law enforcement activity of the Gloucester County Prosecutor because, according to New Jersey statutory law, a county has no involvement in nor oversight over a county prosecutor in his capacity as a law enforcement officer.[2]

---

[2]Moreover, the Court notes that if the Defendants are correct that Dalton is an agent of the state, then the plaintiffs' § 1983 suit would have to be dismissed on the independent ground that neither states nor state officials acting in their official capacities are "persons" for purposes of §

Unfortunately, the question before this Court is not so straightforward.  As noted above, in New Jersey, county prosecutors maintain a hybrid status; indeed, courts have held that county prosecutors in New Jersey perform both in a law enforcement capacity as well as in an administrative capacity.  See Wright v. State, 169 N.J. 422, 442, 449 (N.J. 2001); Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996).  Thus, although New Jersey counties cannot be held liable for the law enforcement activities of a county prosecutor, see Davis, 2005 WL 1863665 at *4,  a county may be held liable for the actions of a prosecutor that involved administrative tasks unrelated to law enforcement. See Coleman, 87 F.3d at 1499.  Therefore, the critical issue is whether, in promulgating any allegedly unlawful policies relating to the investigation of police misconduct and/or the training and supervision of law enforcement officers, Dalton acted in an administrative or policy-making capacity on behalf of the county or whether he acted in a law enforcement capacity on behalf of the state.

Initially, the Court notes that Defendants rely heavily on Judge Cooper's decision in Davis v. Lakewood, 2005 WL 183665 (D.N.J. August 4, 2005) .  At this juncture, the Court finds Defendants' reliance on Davis misplaced.  In Davis, Judge Cooper determined that various counts in the Plaintiff's complaint alleging that the Ocean County Prosecutor's Office ("OCPO") implemented unconstitutional policies and customs in enforcing state laws and pertaining to the enforcement of state laws  would render Ocean County liable for the OCPO's alleged constitutional violations.  Id. at *5.  Because a county prosecutor enforcing state laws is acting as a state agent, the Court granted the County's motion for summary judgment.  Id. at *5.   Thus,

---

1983. See Will v. Michigan Dep't State Police, 491 U.S. 58, 71 (1989).

Judge Cooper held that Ocean County was immune from suit under the Eleventh Amendment

and granted Defendant's Motion for Summary Judgment[3].

  Unlike <u>Davis</u>, however, in the instant matter, Plaintiff argues that Dalton's policy-making

actions were unrelated to the enforcement of state laws.  Specifically, Plaintiff contends that

Dalton set policies relating to the investigation of police misconduct, training and supervision,

and that these were administrative policy-making functions undertaken in Dalton's capacity as an

officer of Gloucester County.  In <u>Carter v. City of Philadelphia</u>, the Third Circuit held that a

Philadelphia prosecutor acted as an arm of the state when performing prosecutorial functions,

however, the Eleventh Amendment did not provide immunity for the prosecutor's training,

supervision or administrative activities.  181 F.3d 339, 353 (3d Cir. 1999).  Indeed, in <u>Carter</u>, the

court determined that:

> [C]ounty or municipal law enforcement officials may be State officials when they
> prosecute crimes or otherwise carry out policies established by the State, but serve
> as local policy makers when they manage or administer their own offices. . .
> Reading the Complaint in the light most favorable to [Plaintiff], it appears that the
> function complained of here is not prosecutorial, but administrative: it involves
> local policies relating to training, supervision and discipline, rather than decisions
> about whether and how to prosecute violations of state law. Therefore, even if a
> member of the Philadelphia DA's Office were deemed a state actor with respect to
> prosecutorial functions, she would nonetheless be a local policymaker with
> respect to the conduct at issue here.

  <u>Id.</u>

  Plaintiff also relies on Courts of Appeals cases from various circuits in which counties

were held liable for administrative actions by prosecutors or other "hybrid" officials.  For

---

[3]Additionally, the Court notes that Judge Cooper was deciding a Motion for Summary
Judgment, however, the motion before this Court is a Motion to Dismiss.  Moreover, the Court
notes that Judge Cooper's decision is not binding on this Court.

example, in Esteves v. Brock, the Fifth Circuit held that "[f]or those duties that are administrative or managerial in nature, a county may be held liable for the actions of a district attorney who functions as a final policymaker for the county."  106 F.3d 674, 678 (5th Cir. 1997).  Similarly, in Myers v. County of Orange, the Second Circuit noted that "[a]lthough a county cannot be held liable for an ADA's improper filing of an indictment, a county can be liable based upon its 'long history of negligent disciplinary practices regarding law enforcement personnel, which gave rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs.'" 157 F.3d 66, 77 (2d Cir. 1998)(citations omitted).  In Myers, the Court held that although the County was not liable for a prosecutor's decision to prosecute a defendant, the county was liable for a policy "that directed the Port Jervis police and county ADA's to engage in investigative procedures that violated Myers' equal protection rights."  Id.  Finally, in Franklin v. Zaruba, the Seventh Circuit held that because a county sheriff was not acting as an agent of the state at the time of his alleged failure to train deputies or establish polices to protect arrestees, the Eleventh Amendment did not bar suit against him.  150 F.3d 682 (7th Cir. 1998).

Initially, the Court notes that these cases may be distinguished on a number of grounds.  For example, the Third Circuit's decision in Carter relied heavily on the fact that unlike county prosecutors in New Jersey, Philadelphia District Attorneys are not statutorily created agents of the state, but county officers. Carter, 181 F.3d at 349.  As discussed above, county prosecutors in New Jersey are statutorily created state agents.  See e.g. Wright, 169 N.J. at 462.  Moreover, in some states prosecutors and other hybrid officials are elected. See e.g. Myers, 157 F. 3d at 75 (citing Fisher v. State, 10 N.Y.2d 60 (1961) ("state is not liable for ADA's tortious presentation of false information to grand jury, because ADAs are local county prosecuting officers and not

10

state officers, and each serves in and for a particular county, is paid by that county and elected by

its voters and has no authority outside his county.")(citation omitted)); <u>Franklin</u>, 150 F.3d at 685.

In New Jersey, however, county prosecutors are not elected, they are appointed by the governor

for five year terms. N.J. Stat. Ann. § 2A:158-1.

      In addition, the Court notes that because Defendants' motion is a motion to dismiss and

not a motion for summary judgment, at this juncture, it is not known whether Gloucester

County's allegedly unconstitutional policies relating to training and supervision fall outside law

enforcement activity or whether they are part and parcel of Dalton's job in enforcing state laws.

In addition, the record is not established as to whether Gloucester County's policies relating to

the training and supervision of law enforcement followed and conformed to state custom and

policies regarding the training and supervision of law enforcement or whether Gloucester

County's policies were a distinct exercise in local policy-making.  With this in mind, I find that

dismissal of Plaintiff's Complaint at this stage would be premature.   On a motion to dismiss, this

Court must read Plaintiff's Complaint in a light most favorable to the Plaintiff.   <u>See</u> <u>Martino v.</u>

<u>County of Camden</u>, 2005 WL 1793718 at *7 (D.N.J. July 26, 2005)("Plaintiff alleges that the

County. . . instituted policies and customs which led to the violation of his constitutional rights.

This Complaint should only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief . . .

reading the Complaint and facts in Plaintiff's favor, Plaintiff has stated a legal claim which

would entitle him to relief under <u>Monell</u>. Therefore [the counts against the] County of Camden

will not be dismissed.").   Therefore, the Court notes that although a properly framed motion for

summary judgment may be appropriate at a later date, at this juncture, the Court will not dismiss

Plaintiff's Complaint against the Gloucester County Defendants in its entirety. However, as noted above, any claims relating to the Gloucester County Defendants' liability for Dalton's law enforcement activities are barred by the Eleventh Amendment and the only claims that remain relate to Dalton's alleged policy-making function on behalf of the county.

2. **Motion for Leave to File Late Tort Claim Notices**

In addition to Defendant's Motion to Dismiss, Plaintiff filed a Motion for Leave to File Late Tort Claim notices on the Gloucester County Defendants[4]. The New Jersey Tort Claims Act ("NJTCA") sets forth a procedural framework for making claims against public entities and public employees. N.J. Stat. Ann. § 59:8-1 et seq (2005). The NJTCA establishes precise time limitations within which a claim may be brought against State agencies and employees. N.J. Stat. Ann.§ 59:8-8. The filing of a notice of claim is a prerequisite to maintaining a suit against a public entity. N.J. Stat. Ann. § 59:8-3. The NJTCA's notice requirements apply to claims arising from negligent conduct as well as intentional torts by public employees that accrued prior to June 29, 2004. Lassoff v. New Jersey, 2006 WL 305750 at *4 (D.N.J. February 8, 2006); Velez v. City of Jersey City, 180 N.J. 284, 294 (N.J. 2004)[5]. By its terms, the statute requires that a

_____

[4]Plaintiff's Complaint sets forth various claims that may be interpreted as asserting state tort claims against the Gloucester County Defendants including claims for intentional misconduct, negligence, gross negligence, deliberate indifference and abuse of process. See Plaintiff's Amended Complaint ("Pl's Compl.") at ¶ 29, 37 and 54

[5]The Court notes that the notice of claim requirement does not apply in all cases that otherwise fall within the scope of the NJTCA. In Fuchilla v. Layman, the New Jersey Supreme Court held that the NJTCA's notice of claim provisions were "inapplicable to actions brought pursuant to section 1983." 109 N.J. 319, 331 (1998). See also Schneider v. Simonini, 163 N.J. 336, 355 (2000) ("[T]he notice provision of the New Jersey Tort Claims Act, N.J.S.A. 59:8-8, does not apply to Section 1983 cases. . .Our holding is also consistent with the overwhelming

notice of claim be presented no later than ninety days after the accrual of the cause of action. N.J. Stat. Ann. § 9:8-8.   "Accrual" of a claim occurs when, among other things, the tort is committed. N.J. Stat. Ann. § 59:8-1 (2005); Fuller v. Rutgers, State Univ., 154 N.J.Super. 420, 423 (App.Div.1977).   A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act:

> [M]ay, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or public employee arising under this act be filed later than 2 years from the time of the accrual of the claim.

N.J. Stat. Ann. § 59:8-9.

Thus, the NJTCA grants courts[6] limited discretion in allowing late notice.  If a motion to file late notice, based on "sufficient reasons constituting extraordinary circumstances," is made within a year of the accrual date, a court may allow the notice to be served. N.J.S.A. § 59:8-9. The phrase "extraordinary circumstances" was added to the statute in 1994 as a way to raise the

---

majority of federal cases, which have uniformly refused to apply the state notice of claim requirement to actions brought pursuant to section 1983."); Garlanger v. Verbeke, 223 F.Supp. 2d 596, 604 (D.N.J. 2002) ("[T]he legislature never intended to subject constitutionally-based torts, such as civil rights claims and claims for inverse condemnation, to the notice-of-claim provisions of the [Torts Claims Act].").

[6]The Court notes that the language of the statute refers specifically to "a judge of the Superior Court." Thus, this Court questions whether Plaintiff can even make application for relief in the instant matter in front of a United States District Judge.  However, in the absence of any case law, the Court will consider Plaintiff's Motion.

bar for the filing of late notice from a "fairly permissive standard" to a "more demanding" standard.  Beauchamp v. Amedio, 164 N.J. 111, 118 (N.J. 2000).

The New Jersey Supreme Court has established a sequential analysis to determine whether a notice of claim has been timely filed.[7]  First, a court must determine the point at which the claim accrued; this determination includes an analysis of discovery rule issues.  Beauchamp, 164 N.J. at 118.  Second, a court must determine if the notice of claim was filed within ninety days of the date of accrual.  If not, a court may then turn to the question of  whether extraordinary circumstances exist justifying late notice.

Accordingly, this Court must initially determine the accrual date of Plaintiff's claim. Although Plaintiff's injuries occurred as a result of the events of August 6, 2003, Plaintiff argues that the claim against the Gloucester County Defendants did not arise until June 30, 2005, the date on which Plaintiff allegedly became aware of the Gloucester County Defendants' involvement in the incident. In other words,  Plaintiff asks this Court to apply the "discovery rule" and hold that the cause of action against the Gloucester County Defendants did not accrue until June 30, 2005.  Moreover, Plaintiff argues that although she has not filed written notice against the Gloucester County Defendants as required by the NJTCA, she has substantially complied with the notice requirements and Defendants will not be prejudiced by a late filing. The Court does not agree.

It is well-established that a claim accrues at the time of the accident, or, more plainly,

---

[7]In Beauchamp, the New Jersey Supreme Court explained that "[i]t is a common and regrettable occurrence for accrual and extraordinary circumstances to be treated as interchangeable and for courts and litigants to overlook the primary question of accrual and directly confront the ultimate question of extraordinary circumstances. What is important is to understand the framework of a Tort Claims notice analysis and to follow it."  164 N.J. at 120.

from the moment that the wrong occurred.  Beauchamp, 164 N.J. at 121;  Amland Properties Corp. v. Aluminum Co. of America, 808 F.Supp. 1187, 1190 (D.N.J.1992).  New Jersey's discovery rule provides that in an appropriate case, a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim.  Fuller v. Rutgers, 154 N.J. Super. 420, 424 (Super. App. Div. 1977); Beauchamp, 164 N.J. at 121-122.  Thus, if equity dictates, New Jersey will apply the discovery rule and toll the accrual date of a cause of action until an injured party discovers that the elements of a claim exist.

        In Beauchamp, for example, the New Jersey Supreme Court held that there was no discovery rule issue where a plaintiff knew that she was injured by a public employee, but did not know the extent of her injuries.  There, the Court held that Plaintiff's cause of action had accrued on the date of her accident, and "the fact that [plaintiff] was not yet possessed of evidence of the permanency of her injury in no way affects the maintainability of the action itself. It only limits the permissible extent of the recovery by eliminating one of the customary elements of common-law personal injury damages."  Beauchamp, 164 N.J. at 120.   Moreover, it is well-established that the discovery rule will not toll the accrual of a cause of action until a claimant has identified all potentially liable defendants.  New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1125 (3d Cir. 1997) ("The discovery rule does not delay the running of the statute of limitations until a plaintiff is aware of all the facts necessary to bring its cause of action. Under the discovery rule, a claim accrues upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong. . . . Further, the discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim."); Provenzano

v. Integrated Genetics, 22 F.Supp.2d 406, 411 (D.N.J. 1998) ("[T]he discovery rule applies and the statute of limitations begins to run when the plaintiff is aware of an injury and knew that the injury was caused by a third person. The rule is designed to toll the statute of limitations in a situation where the plaintiff realizes an injury but does not know that the injury can be attributed to another. The rule does not require. . . that the plaintiff realize the injurer's exact identity.")(citation omitted); Jordan v. Tapper, 143 F.R.D. 575, 586 n. 14 (D.N.J. 1992)("[T]he discovery rule is intended to toll the limitations period where plaintiff lacks knowledge of a cause of action, not the identity of potential defendants.")

In the instant matter, Plaintiff was injured on August 6, 2003, at which time Plaintiff knew that she was injured by a public entity.  Although Plaintiff alleges that she did not know that the Gloucester County Defendants were involved until almost two years later, as discussed above, Plaintiff's lack of knowledge of the identity of all potential defendants is not a reason for application of the discovery rule.  See id.  Moreover, the Court finds that with reasonable diligence, Plaintiff could have discovered that the Gloucester Defendants were involved with the search warrant and ensuing action.   Thus, the Court holds that there is no actionable discovery rule issue, and the Court will not toll the accrual date.  As in Beauchamp, this Court's refusal to toll the accrual date will not affect the maintainability of the state claims in this action since Plaintiff has filed a notice of claim against West Deptford.  At most, the Court's refusal to toll the accrual date will simply eliminate one of the potential parties for her tort claim.

In addition, even if Plaintiff could somehow convince this Court that the accrual date was June 30, 2005, Plaintiff would have had 90 days from that date to timely file a notice of claim on the Gloucester County Defendants.  Thus, Plaintiff would have had until approximately

September 30, 2005 to file a notice of claim.  However, Plaintiff did not file her Motion for Leave to File late notice until December 7, 2005.[8]

Moreover, despite Plaintiff's attempt to convince this Court that she substantially complied with the notice requirement of the NJTCA, the Court does not agree.   Plaintiff has not yet filed written notice on the Gloucester County Defendants.  Furthermore, although several New Jersey courts have held that strict compliance with NJTCA notice requirements is not necessary, the cases that excuse strict compliance generally involve claimants who have been diligent in their efforts at compliance.  Sinclair v. Dunegan, 905 F. Supp. 208, 212 (D.N.J. 1995).  For example, in Feinberg v. New Jersey Department of Environmental Protection, 137 N.J. 126 (N.J. 1994), a property owner brought suit against the state of New Jersey, the Department of Environmental Protection and Energy ("DEPE"), and the canal commission for damage to property caused by groundwater overflow at the canal.  The property owner served timely notice on the state Attorney General and the DEPE, however, the Plaintiff did not add the New Jersey Water Supply Authority as a defendant until two years later when it learned that the Authority leased the canal complex under an unrecorded lease. Because the lease was unrecorded, Plaintiff could not have known of the Authority's involvement in the canal.  Moreover, Plaintiff's counsel served interrogatories to ascertain the identity of any other defendants, but the original defendants delayed in answering the complaint until after the expiration of the filing period.

_____

[8]Thus, Plaintiff's state law claims against the Gloucester County Defendants are time barred pursuant to N.J. Stat. Ann. § 59:8-9 which provides that " in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim."  As discussed above, the Court finds that Plaintiff's cause of action accrued on August 6, 2003.  Thus, the last date on which Plaintiff could have possibly filed tort claims against the Defendants was August 8, 2005.

Under these unusual circumstances, the court excused strict compliance and held that

governmental entities should not be able to "impale a diligent claimant on the Act's technical

requirements for notification." Id. at 134-135.

Conversely, in Sinclair v. Dunagan, Plaintiff, a pedestrian who was struck by a car, sued

the driver who hit him as well as the township  in which the accident occurred. 905 F. Supp. 208,

211 (D.N.J. 1995).  The township moved to dismiss on the grounds that it was not given proper

notice of the claim in violation of the NTJCA.  There, the Court held that Plaintiff had never

attempted to provide notice to the township and that the only notice received by the township

came from two insurance companies.  Indeed, the court found that although the letters from the

insurance company explicitly stated that the town was "on notice" of its involvement in the suit

at hand, this was not substantial compliance because the letters did not present a  fully developed

claim nor did they properly represent the interests of the Plaintiff such that the township could be

expected to acknowledge a claim on Plaintiff's behalf.  The court explained that the township

could not be expected to "divine [from the insurance company letters] a claim by the insured,"

and that Plaintiff's failure to provide notice would prejudice the township by "depriving it of the

opportunity to conduct an early investigation which is the primary purposes of the notice

requirement." Id. at 212-213.  Thus, the court held that Plaintiff had not substantially complied

with the notice requirements of the NJTCA and  dismissed Plaintiff's suit.

Applied here, the Court finds that Plaintiff's actions with respect to the Gloucester

County Defendants do not amount to substantial compliance with the NJTCA.   Unlike Feinberg,

Plaintiff's counsel was not particularly diligent in determining the identity of other potential

defendants in the instant matter.  For example, although Plaintiff's initial Complaint included

18

"John Doe" Defendants, Plaintiff's counsel may have known of the Gloucester County

Defendants' involvement prior to the filing of the initial complaint.  See Plaintiff's Motion to

Amend Complaint, Certification of Sharon King at ¶6 ( "[A] review of police reports from the

defendant officers obtained prior [to] the complaint being filed indicate [sic] that the defendant

officers were assisting West Deptford Township Defendants with the execution of a search

warrant at the time of [sic] the incident occurred.  Upon reviewing the Answer to the Complaint.

. . it has become apparent that Gloucester County, through its agent, Gloucester County

Prosecutor's Office, was also involved in the execution of the search warrant.").  Moreover, to

the extent that Plaintiff did not know the identities of the "John Doe" defendants, she does not

appear to have made any attempt to discover the identities of the other potential defendants.  No

reason is proffered as to why she did not timely review the police reports.  A reasonable amount

of due diligence could have disclosed to Plaintiff, early on, that the Gloucester County

Defendants were involved in the August 6, 2003 incident.  In addition, Plaintiff does not allege

that any of the Defendants engaged in delay tactics or otherwise attempted to cause Plaintiff's

claim to become time-barred.  Finally, the Court notes that unlike the Township in Sinclair who

received some form of notice of its potential involvement in the lawsuit, it is unclear whether

Gloucester County received any notice about its potential involvement in this suit until Plaintiff

filed its amended complaint in August 2005.  For these reasons, the Court holds that Plaintiff has

not substantially complied with the notice requirements and that late notice would prejudice

Gloucester County.

          The inquiry, however, is not over. Plaintiff argues that even if the accrual date is deemed

to be August 6, 2003, extraordinary circumstances exist that justify the filing of a late notice.  As

above, Plaintiff argues that she did not know that the Gloucester County Defendants were involved in the incident and that this late discovery exemplifies an extraordinary circumstance justifying the filing of late notice.  The Court does not agree.

The extraordinary circumstances provision requires a significant showing by Plaintiff. Banks v. City of Elizabeth, 318 N.J. Super. 106, 111-112 (Super. App. Div. 1999).  For example, in Banks, the court held that the extraordinary circumstances threshold was met where a  plaintiff within 90 days neither knows nor is chargeable with knowing the existence of a cause of action against a public entity.   Id.  However, ignorance of public entities involved, without more, is not an extraordinary circumstance justifying leave to file a late notice of claim under NJTCA. See Forcella v. City of Ocean City, 70 F. Supp. 2d 512 (D.N.J. 1999).  Thus, in the instant matter, the mere fact that Plaintiff did not know that of the Gloucester County Defendants' involvement, without more, is not an extraordinary circumstance justifying late notice.  Therefore, this Court holds that Plaintiff has not established extraordinary circumstances justifying the filing of late tort claim notices on the Gloucester County Defendants, and, to the extent that any of the Counts in Plaintiff's Complaint can be interpreted as asserting state law claims against the Gloucester County defendants, these claims are barred by the NJTCA.

**3.  Statute of Limitations**

Finally, Defendants argue that this Court must dismiss Plaintiff's Complaint as being barred by the statute of limitations. Specifically, Defendants contend that Plaintiff's cause of action arose on August 6, 2003, however, Plaintiff did not file a Motion to Amend until August 8, 2005 and Plaintiff's First Amended Complaint was not filed until August 26, 2005.   Thus,

20

Defendants argue that Plaintiff's Complaint is untimely.  In addition, Defendants argue that because the Amended Complaint was not filed until after the expiration of the statute of limitations, they did not receive timely notice of the action prior to the expiration of the limitation period.  Thus, Defendants claim they would be unfairly prejudiced if this Court were to allow the action to go forward. The Court does not agree.

Initially, the Court finds that the two-year statute of limitation for Plaintiff's claim ran on August 8, 2005.  Pursuant to the Federal Rules of Civil Procedure, when a court computes a period of time in which an action occurred, the last day of the period is included "unless it is a Saturday, a Sunday or a legal holiday" in which case the period runs until the end of the next business day.  Fed. R. Civ. P. 6(a).  Applied here, the Court notes that August 6, 2005 was a Saturday, thus, the statute of limitations did not expire until the following business day, August 8, 2005.  Moreover, the Court finds that Defendants' argument about notice puts forth a factual question as to whether the Gloucester County Defendants received timely or constructive notice of Plaintiff's action prior to the expiration of the limitations period.  At this juncture, there is no record upon which the Court may make such a determination; thus the Court can not properly rule on this issue at this time.


**IV. Conclusion**

For the reasons stated herein, Plaintiff's Motion for Leave to File Late Tort Notices is denied.  To the extent that any of the Counts in Plaintiff's Complaint can be interpreted as asserting state law claims against the Gloucester County defendants, these claims are barred by the NJTCA.  Moreover, Defendant's Motion to Dismiss is granted in part and denied in part.

Specifically, to the extent that Plaintiff's allegations arise out of the Gloucester County

Prosecutor's law enforcement activity, these claims are barred by the eleventh amendment.

However, to the extent that Plaintiff's allegations arise out of the Prosecutor's official

administrative or policy making activity on behalf of the county, these claims are not dismissed.

An appropriate Order will follow.


Dated: March 30, 2006                              /s/ Freda L. Wolfson
                                                   Honorable Freda L. Wolfson
                                                   United States District Judge